# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

2013-1186

## SMARTGENE, INC.,

*Plaintiff-Appellee*,

**v.**

## ADVANCED BIOLOGICAL LABORATORIES, SA and
## ABL PATENT LICENSING TECHNOLOGIES, SARL,

*Defendants-Appellants.*

Appeal from the United States District Court for the District of Columbia
in case no. 08-CV-0642, Judge Beryl A. Howell

## BRIEF OF PLAINTIFF-APPELLEE, SMARTGENE, INC.

Frederick N. Samuels, Esq.
Maurice U. Cahn, Esq.
CAHN & SAMUELS, LLP
1100 17th St., N.W., Ste. 401
Washington, D.C. 20036
Tel:  (202) 331-8777
frederick.samuels@cahnsamuels.com
maurice.cahn@cahnsamuels.com

Form 9

**FORM 9.  Certificate of Interest**

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Smartgene, Inc. _____ v. Advanced Biological Laboratories, SA

No. 2013-1186

## CERTIFICATE OF INTEREST

Counsel for the ~~(petitioner)~~ ~~(appellant)~~ ~~(respondent)~~ (appellee) ~~(amicus)~~ (name of party)
Smartgene, Inc. _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:
Smartgene, Inc.

---

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:
Smartgene, Inc.

---

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:
None

---

4.  ☑  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:
DurretteBradshaw PC, Wyatt Durette, Esq. and Christine A. Williams, Esq .
Cahn & Samuels, LLP, Frederick N. Samuels, Esq. and Maurice U. Cahn, Esq.

2/14/13
Date

Signature of counsel

Maurice U. Cahn
Printed name of counsel

Please Note: All questions must be answered
cc: _____

# Table of Contents

STATEMENT OF RELATED CASES ............................................................ 1

STATEMENT OF JURISDICTION ............................................................... 1

STATEMENT OF THE ISSUES .................................................................... 2

STATEMENT OF THE CASE ...................................................................... 2

STATEMENT OF THE FACTS ..................................................................... 5

I.    The '786 Patent ................................................................................. 5

II.    The '988 Patent ................................................................................ 7

STATEMENT OF THE STANDARD OF REVIEW ................................... 8

SUMMARY OF THE ARGUMENT ............................................................ 8

ARGUMENT .............................................................................................. 10

I.    Standards for Determining Patent Eligibility Under Section 101 .......... 10

II.    District Court Faithfully Followed Supreme Court Precedent............ 12

    A.    The District Court Properly Applied the Supreme Court
    Guideposts ............................................................................... 13

    B.    The District Court Properly Individually Analyzed Each
    Limitation of the Claims............................................................. 16

        1.    Step (a)....................................................................... 17

        2.    Step (b) and Step (c) ................................................... 18

    C.    The District Court Properly Analyzed the Claims as a Whole ... 19

III.    The District Court Properly Found the ABL Claims Failed the MOT
Test ……………………………………………………………………..21

    A.    The District Court Properly Found that the "Computing Device"
    Mentioned in the Claims is Not a Particular Machine ........................... 21

i

1.    The Claims Govern the §101 Analysis........................................ 22

2.    The Claimed Computing Device Is a General Purpose Computer
……………………………………………………………..23

3.    The District Court Was Not Required to Construe the
"Computing Device" Limitation ......................................... 24

4.    The Claimed Method Does Not Require Use of a Computer ..... 26

B.    The District Court Properly Found That the '786 Patent Affects
No Transformation ................................................................. 27

IV.    Federal Circuit Precedent after *Bilski* Supports Unpatentability ........ 28

A.    The ABL Claims are Non-Statutory Under the "Mental Steps"
Approach .............................................................................. 29

B.    The ABL Claims Are Non-Statutory Under the "Meaningful
Limitations" Approach ......................................................... 30

C.    The ABL Claims are Non-Statutory Under the Preemption
Approach .............................................................................. 33

V.    DC Circuit Review Standards Apply to the Non-patent Issues .......... 36

A.    The More Deferential Abuse of Discretion Standard Applies to
Procedural Issues ................................................................. 37

B.    ABL's Reliance on *Dyson* Is Misplaced ..................................... 38

C.    ABL's Inclusion of and Reliance on Stricken Material in Its Brief
Is Improper .......................................................................... 39

VI.    The District Court Properly Denied Reconsideration under Rule 59(e)
……………………………………………………………..43

VII.    The District Court Acted Properly in Invalidating All Claims of the
'786 and '988 Patents ................................................................. 45

A.    The Record Amply Demonstrates Ongoing Injury to Smartgene
from the Existence of the Patents-in-Suit............................... 45

B.    The Record Fully Supports the Propriety of the District Court's Claims Grouping.................................................................................... 47

CONCLUSION AND RELIEF SOUGHT .................................................. 48

# Table of Authorities

## Cases

*Accenture Global Services, GMBH v. Guidewire Software, Inc.*, 691 F. Supp. 2d 577 (D. Del. 2010) ..................................................................... 23

*Acumed LLC v. Stryker Corp.*, 551 F.3d 1323 (Fed.Cir.2008) ..................... 37

*Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.,* 340 F.3d 1298 (Fed. Cir. 2003) ........................................................................... 37

*Ballard Medical Prods. v. Wright,* 821 F.2d 642 (Fed. Cir.1987) ............... 42

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266 (Fed. Cir. 2012) ....................................................................................... 17, 48

*Belt v. Holton*, 197 F.2d 579, (D.C. Cir. 1952) ........................................... 41

*Bilski v. Kappos*, 130 S. Ct. 3218 (2010) ............................................ passim

*Bluebonnet Sav. Bank, F.S.B. v. United States,* 466 F.3d 1349 (Fed. Cir. 2006) ..................................................................................... 44

*Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.,* 630 F.3d 217 (D.C. Cir. 2011) ......................................................................................... 37

*Catrett v. Johns-Manville Sales Corp.*, 826 F.2d 33 (D.C. Cir. 1987) ......... 40

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.,* 717 F.3d 1269 (Fed. Cir. 2013) ................................................................................................ passim

*Cybersource v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011) 19, 29, 30, 34

*Dealertrack, Inc. v. Huber,* 674 F.3d 1315 (Fed. Cir. 2012) ...... 22, 23, 31, 32

*Delaware Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374 (Fed. Cir.2010) ................................................................................. 37, 42

*Diamond v. Chakrabarty,* 447 U.S. 303, 100 S.Ct. 2204 (1980) ................. 10

*Diamond v. Diehr,* 450 U.S. 175, 101 S.Ct. 1048 (1981) ..................... passim

iv

*Digitech Information Information Sys. v. BMW Auto Leasing,* 504 Fed.Appx. 920 (Fed. Cir. May 10, 2013) ...................................................................... 1

*Dyson v. Dist. of Columbia,* 710 F.3d 415 (D.C. Cir. 2013) .................. 38, 39

*ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509 (Fed.Cir. 2012) ........... 37

*Flynn v. Dick Corp.,* 481 F.3d 824 (D.C. Cir.2007)..................................... 37

*Fort Props., Inc. v. Am. Master Lease LLC,* 671 F.3d 1317 (Fed. Cir.2012) ...................................................................................................... 30, 31, 32

*Fox Grp., Inc. v. Cree, Inc.*, 700 F.3d 1300 (Fed. Cir. 2012)....................... 46

*Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029 (D.C. Cir. 1988)................... 40

*Graff/Ross Holdings, LLP v. Fed. Home Loan Mortg. Corp.* CIV. 07-796-RJL-AK, 2010 WL 6274263 (D.D.C. Aug. 27, 2010) *report and recommendation adopted*, 892 F. Supp. 2d 190 (D.D.C. 2012)................ 23

*Grumman Aircraft Eng'g Corp. v. Renegotiation Board,* 482 F.2d 710 (D.C. Cir.1973), *rev'd on other grounds,* 421 U.S. 168 (1975) .......................... 44

*GSS Grp. Ltd v. Nat'l Port Auth.,* 680 F.3d 805 (D.C. Cir. 2012)................ 37

*i4i Ltd. P'ship v. Microsoft Corp.,* 598 F.3d 831 (Fed. Cir. 2010), *aff'd,* 131 S.Ct. 2238 (2011)...................................................................................... 36

*In re Bilski,* 545 F.3d 943 (Fed.Cir.2008), *aff'd on other grounds, Bilski,* – U.S. –, 130 S.Ct. 3218, (2010); ............................................................... 27

*In re Cygnus Telecommunications Tech., LLC, Patent Litig*., 536 F.3d 1343 (Fed. Cir. 2008)......................................................................................... 42

*In re Meyer,* 688 F.2d 789 (C.C.P.A. 1982) ............................................... 47

*Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner,* 101 F.3d 145 (D.C. Cir. 1996)................................................................................. 37

*Jervis B. Webb Co. v. So. Sys., Inc.,* 742 F.2d 1388 (Fed. Cir. 1984).......... 46

*Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871 (1990)..................................... 44

*MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118 (2007) ......................... 47

*Parker v. Flook,* 437 U.S. 584, 98 S.Ct. 2522 (1978) ........................... passim

*Patton Boggs LLP v. Chevron Corp.*, 683 F.3d 397 (D.C. Cir. 2012) ......... 37

*PPG Indus., Inc. v. Celanese Polymer Specialties* Co., 840 F.2d 1565 (Fed. Cir. 1988). ................................................................................................ 38

*Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859 (Fed. Cir. 2010) .................................................................................................... 35

*Scanner Techs. Corp. v. ICOS Vision Sys. Corp. N.V.,* 528 F.3d 1365 (Fed. Cir. 2008) ............................................................................................. 46

*SiRF Tech. Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319 (Fed. Cir. 2010) .... 27

*Streck, Inc. v. Research & Diagnostic Sys., Inc.,* 665 F.3d 1269 (Fed. Cir. 2012) ................................................................................................... 46

*Ultramercial, Inc. v. Hulu, LLC*, _F.3d_ , 2013 WL 3111303 (Fed. Cir., June 21, 2013) ..................................................................................... 1, 30, 33

*Washburn v. Lavoie,* 437 F.3d 84 (D.C. Cir. 2006) ..................................... 37

*Wellman, Inc. v. Eastman Chem. Co.,* 642 F.3d 1355 (Fed. Cir. 2011) ....... 44

**Statutes**

35 U.S.C. §101 ..................................................................................... passim

**Rules**

Fed. Cir. Rule 28(b) .......................................................................... 1, 2, 8

Rule 59(e) ...................................................................................... 39, 41, 43

## STATEMENT OF RELATED CASES

Appellee, SmartGene, Inc. ("Smartgene"), does not disagree with

Advance Biological Laboratories SA's ("ABL") Statement of Related Cases,

except that *Digitech Information Information Sys. v. BMW Auto Leasing,*

504 Fed.Appx. 920 (Fed. Cir. May 10, 2013) was not pending in this Court

at the time Appellant's brief was filed as it was affirmed *per curiam*.

Further, *WildTangent v. Ultramercial*, No. 2011-962, was decided by this

Court *sub nom*, on June 21, 2013. *See Ultramercial, Inc. v. Hulu, LLC*,

_F.3d _, 2013 WL 3111303 (Fed. Cir. June 21, 2013).

## STATEMENT OF JURISDICTION

Pursuant to Fed. Cir. Rule 28(b), Smartgene does not disagree with

ABL's Statement of Jurisdiction except to the extent that this appeal was

taken from a final summary judgment entered by the U.S. District Court for

the District of Columbia on March 30, 2012. (A38). With the exception of

fees and costs motions, the District Court's judgment disposed of all claims

by the parties and was final. The District Court later denied reconsideration

of that Final Judgment Order on January 3, 2013 and granted Smartgene's

motion to strike (A39).

1

## STATEMENT OF THE ISSUES

Pursuant to Fed. Cir. Rule 28(b), Smartgene submits the following issues are involved within this appeal.

Whether the District Court properly granted Smartgene's motion for summary judgment finding all of the claims of the patents-in-suit invalid under 35 U.S.C. § 101 as merely defining non-statutory abstract ideas.

Whether the District Court properly granted Smartgene's motion to strike the declarations and attached exhibits presented by ABL as part of its Rule 59 reconsideration motion.

## STATEMENT OF THE CASE

Pursuant to Fed. Cir. Rule 28(b), Smartgene enlarges on ABL's Statement of the Case as follows. On September 6, 2007, ABL filed suit against Smartgene in the district court for the Eastern District of Texas alleging that Smartgene infringed U.S. Patent Nos. 6,081,786 (the "786 patent") and 6,188,988 (the "988 patent"). The Texas court dismissed the suit against Smartgene on April 10, 2008 for lack of personal jurisdiction. (A58-59).

On May 8, 2008, Smartgene filed its complaint for declaratory judgment that all claims of the '786 patent and the '988 patent are invalid and/or unenforceable and that its business activities do not infringe any of

those patents. (A57-64). The case was stayed for over two years pending reexamination of the '786 and '988 patents. (A248, 282-283).[1] After the case was reinstated, ABL filed a motion to substitute parties. (A300-302). The district court denied that motion and found that the "evidentiary record does not clearly indicate the full ownership of the patents." Instead, the district court added ABL Patent Licensing Technologies, SARL ("ABL PLT") as a party. (A310, A311-315).

On December 12, 2011 Smartgene filed its motion for partial summary judgment of invalidity under 35 U.S.C. § 101 and memorandum in support thereof. (A366-390). ABL filed its opposition on December 27, 2011. (A511-529). On January 12, 2012, ABL submitted its opening claim construction brief. (A660-683). On February 3, 2012, Smartgene filed its response to ABL's claim construction brief (A800-822) and on February 10, 2012, ABL filed its reply claim construction brief. (A916-929).

The District Court heard oral argument on the summary judgment motion and the claim constructions briefs on March 9, 2012. (A2759-2818).

---

[1]ABL insinuates that Smartgene engaged in "multiple reexaminiation attempts". (ABL Br. 2) That is a mischaracterization. Smartgene initiated a single Reexamination for each of the '786 and '988 patents. Those *ex parte* requests were merged *sua sponte* by the Patent Office into *inter parties* proceedings initiated by Stanford University.

On March 30, 2012, the District Court issued an order granting Smartgene's motion for summary judgment. (A38). In a detailed and well reasoned 37-page opinion, the District Court explained its decision. (A1-37). Applying the relevant Supreme Court and Federal Circuit precedent, the District Court concluded that claims of the patents-in-suit were directed to abstract processes that could be performed in the human mind. (A22-23). The District Court also found that the claims of the patents-in-suit failed the machine-or-transformation test and determined that the "computing device" recited in those claims was (i) not a particular machine and (ii) incidental to the claimed invention. (A26-30).

On April 27, 2012, ABL moved for reconsideration submitting two declarations and thousands of pages of new evidence (A955-2651) and Smartgene opposed (A2747-2758). On May 9, 2012, Smartgene moved to strike the declarations submitted with ABL's reconsideration motion (A2655-2745, A2844-2851) and ABL opposed (A2829-2842).

On January 3, 2013, the District Court denied ABL's motion for reconsideration and granted Smartgene's motion to strike. (A39-56).

**STATEMENT OF THE FACTS**

Pursuant to Fed. Cir. Rule 28(b), Smartgene enlarges ABL's

Statement of Facts by reproducing the independent claims of the '786 patent

and commenting on the '988 patent:

**I.      The '786 Patent**

The '786 patent, entitled "System, Methods and Computer Program

Product for Guiding the Selection of Therapeutic Treatment Regimens,"

issued to Triangle Pharmaceuticals, Inc. as assignee on June 27, 2000.

(A147-181).

The '786 patent includes three independent claims which are

reproduced below:

> Claim 1.  A method for guiding the selection of a
> therapeutic treatment regimen for a patient with a known
> disease or medical condition, said method comprising:
>
> (a) providing patient information to a computing device
> comprising:
>> a first knowledge base comprising a plurality of
>> different therapeutic treatment regimens for said
>> disease or medical condition;
>> a second knowledge base comprising a plurality of
>> expert rules for evaluating and selecting a
>> therapeutic treatment regimen for said disease or
>> medical condition;
>> a third knowledge base comprising advisory
>> information useful for the treatment of a patient
>> with different constituents of said different
>> therapeutic treatment regimens; and

(b) generating in said computing device a ranked listing of available therapeutic treatment regimens for said patient; and

(c) generating in said computing device advisory information for one or more therapeutic treatment regimens in said ranked listing based on said patient information and said expert rules.

Claim 23.  A system for guiding the selection of a therapeutic treatment regimen for a patient with a known disease or medical condition, said system comprising:

(a) a computing device comprising:
    a first knowledge base comprising a plurality of different therapeutic treatment regimens for said disease or medical condition;
    a second knowledge base comprising a plurality of expert rules for selecting a therapeutic treatment regimen for said disease or medical condition;
    a third knowledge base comprising advisory information useful for the treatment of a patient with different constituents of said different therapeutic treatment regimens; and

(b) means for providing patient information to said computing device;

(c) means for generating in said computing device a ranked listing of therapeutic treatment regimens for said patient; and

(d) means for generating in said computing device advisory information for one or more therapeutic treatment regimens in said ranked listing based on said patient information and said expert rules.

Claim 45.  A computer program product for guiding the selection of a therapeutic treatment regimen for a patient with a known disease or medical condition, said

computer program product comprising a computer usable storage medium having computer readable program code means embodied in the medium, the computer readable program code means comprising:

(a) computer readable program code means for generating:
> a first knowledge base comprising a plurality of different therapeutic treatment regimens for said disease or medical condition;
> a second knowledge base comprising a plurality of expert rules for selecting a therapeutic treatment regimen for said disease or medical condition;
> a third knowledge base comprising advisory information useful for the treatment of a patient with different constituents of said different therapeutic treatment regimens; and

(b) computer readable program code means for providing patient information;

(c) computer readable program code means for generating a ranked listing of available therapeutic treatment regimens for said patient; and

(d) computer readable program code means for generating advisory information for one or more therapeutic treatment regimens in said ranked listing based on said patient information and said expert rules.

## II.        The '988 Patent

The '988 patent, entitled "System, Methods and Computer Program Product for Guiding the Selection of Therapeutic Treatment Regimens," issued to Triangle Pharmeceuticals, Inc. as assignee on February 13, 2001. (A182-217). The '988 patent is a continuation of the '786 patent and

7

therefore shares the same specification as the '786 patent and is subject to a terminal disclaimer linking the term of the '988 patent to that of the '786 patent.  (A100).

## STATEMENT OF THE STANDARD OF REVIEW

Pursuant to Fed. Cir. Rule 28(b), Smartgene disagrees that the standard of review for all of the issues in this the appeal is *de novo*. Smartgene agrees that the review of the summary judgment for subject matter patent ineligibility under 35 U.S.C. § 101 is subject to *de novo* review.  However, as detailed *infra,* review of the district court's striking of post judgment evidence and denying reconsideration are subject to the more deferential abuse of discretion standard.

## SUMMARY OF THE ARGUMENT

The District Court's decisions regarding summary judgment and regarding reconsideration are thorough, well reasoned and correctly decided. This Court should affirm the District Court's grant of summary judgment and denial of reconsideration in all respects.

The District Court properly applied Supreme Court and Federal Circuit precedent to find the claims of the patents-in-suit to be directed to abstract mental processes, not patent eligible processes.  The District Court

properly followed the analysis employed by the Supreme Court in *Bilski v. Kappos*, 130 S.Ct. 3218 (2010) and *Prometheus*.

The ABL claims are directed to a method for guiding the selection of a therapeutic treatment regimen for a patient with a known disease or medical condition. As the District Court found, the ABL claims are similar to the non-statutory algorithm claims in *Parker v. Flook*, 437 U.S. 584 (1978) and they suffer from the same infirmity – they recite an abstract process that can be performed in the mind of a human. *Flook* held that when the unpatentable algorithm is removed from the claim, nothing remains that would render the claim statutory. Here, when the abstract mental processes are removed, all that remains is a general purpose computing device which cannot render the abstract mental processes patent eligible.

The MOT test, the preemption test, and the meaningful limitations test confirm the claims of the patents-in-suit are directed to non-statutory subject matter. No particular machine is required to perform the steps. The claimed computing device is at best a general purpose computer. In addition, the claims do not effect any transformation. Accordingly, the District Court correctly found that all of the claims of the patents-in-suit are non-statutory.

The District Court properly denied ABL's motion for reconsideration which was premised on the assertion that *Prometheus* represents a change in

the controlling law regarding the abstractness analysis under § 101.

*Prometheus* is consistent with *Flook* and *Diamond v. Diehr*, 450 U.S. 175

(1981) and is not a change in controlling law.  Accordingly the entire

predicate for ABL's motion for reconsideration was faulty and it was

properly denied.

Finally, the District Court properly struck from the record materials

submitted with the motion for reconsideration as there was no change in

controlling law to justify the late submission.

**ARGUMENT**

**I.        Standards for Determining Patent Eligibility Under Section
              101**

Section 101 of the Patent Act defines four categories of patentable

subject matter: processes, machines, manufactures, and compositions of

matter.  35 U.S.C. § 101.  The Supreme Court has recognized "three specific

exceptions to § 101's broad patent-eligibility principles: 'laws of nature,

physical phenomena, and abstract ideas.'" *Bilski v. Kappos*, 130 S. Ct. 3218,

3225 (2010)(citing *Diamond v. Chakrabarty,* 447 U.S. 303, 309 (1980).  As

the Supreme Court has explained, "[p]henomena of nature, though just

discovered, mental processes, and abstract intellectual concepts are not

patentable, as they are the basic tools of scientific and technological work."

*Gottschalk v. Benson,* 409 U.S. 63, 67 (1972). "[A] process is not

10

unpatentable simply because it contains a law of nature or a mathematical algorithm," and "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Diamond v. Diehr,* 450 U.S. 175, 187 (1981)(internal quotation marks omitted). However, "limiting an abstract idea to one field of use or adding token post-solution components d[oes] not make the concept patentable." *Bilski,* 130 S.Ct. at 3231. In other words, a recitation of ineligible subject matter does not become patent-eligible merely by adding the words "apply it." *See Prometheus,* 132 S.Ct. at 1294.

In *Bilski*, the Supreme Court stated that its precedents establish that the machine-or-transformation test ("MOT") is a useful and important clue, an investigative tool, for determining whether some claimed inventions are processes under § 101. *Bilski*, 130 S. Ct. at 3227. However, the Supreme Court ruled that a court should not exclusively rely on the MOT test to determine whether a patent claim covers an abstract idea. *Id.* A court should look to the guideposts of *Benson, Flook,* and *Diehr* in analyzing the §101 issue. *Bilski*, 130 S. Ct. at 3231.

The Supreme Court has not yet endeavored to more precisely define what constitutes a non-statutory abstract idea; rather, it evaluates each claim against the framework established by its precedents. *See Prometheus*, 132 S.

11

Ct. at 1299 ("The claim before us presents a case for patentability that is weaker than the (patent eligible) claim in *Diehr* and no stronger than the (ineligible) claim in *Flook*").  Citing *Flook* and *Bilski*, the *Prometheus* Court expressly ruled that "a process that focuses upon the use of a natural law [abstract idea] [must] also contain other elements or combination of elements, sometimes referred to as an 'inventive concept'". *Id*. at 1294. "[W]ell-understood, routine, conventional activity" cannot provide an inventive concept.  *Prometheus,* 132 S. Ct. at 1298; *see Bilski*, 130 S. Ct. at 3230 ("[T]he prohibition against patenting abstract ideas cannot be circumvented by … adding insignificant post-solution activity")(internal quotation marks omitted).  The foregoing Supreme Court precedents require a finding that the claims of the patents-in-suit are directed to non-statutory subject matter in this case.

## II.        District Court Faithfully Followed Supreme Court Precedent

The District Court faithfully followed the claim analysis employed in *Prometheus*.  The District Court reached its conclusion that the claims before it were non-statutory by first analyzing each element of the claims individually and then as a whole using the precedential guideposts of *Bilski, Benson, Flook,* and *Diehr*.  (A19-23).  That is precisely what *Prometheus*

requires.  *Prometheus* does not require a court to employ any specific test in making its analysis.

### A. The District Court Properly Applied the Supreme Court Guideposts

The ABL claims[2] recite a series of steps that involve the mental process of providing patient information (data gathering), ranking treatment regiments (data reorganization) and generating advisory information relating to the treatment regimens (data reorganization).  These steps do not represent a statutory application of an abstract idea but rather non-statutory processes of human thinking.  They are more similar to the non-statutory claims in *Benson, Flook,* and *Bilski*, than the claims approved in *Diehr*.

### *Benson*

As explained in *Bilski*, the *Benson* Court affirmed the rejection of a patent application for "an algorithm to convert binary-coded decimal numerals into pure binary code." *Bilski*, 130 S. Ct. at 3230 (citing *Benson*, 409 U.S. at 64-67).  Notably, the claims in *Benson* recited a specific underlying computer structure.  Claim 8, for example, recited "storing the binary coded decimal signals...in a shift register." *Benson*, 409 U.S. at 73-74.  The claim was unpatentable despite the presence of the shift register.

---

[2] The term "ABL Claims" refers to representative claim 1 of the '786 patent which is representative for § 101 purposes, of all of the claims of the patents-in-suit.

Because the claim was not limited to a practical physical application, the *Benson* Court explained that "[a] contrary holding 'would wholly pre-empt the mathematical formula and in practical effect would be a patent on the algorithm itself.' " *Bilski*, 130 S. Ct. at 3230 (quoting *Benson*, 409 U.S. at 72.)

### *Flook*

In *Flook*, the Supreme Court was presented with claims to "a procedure for monitoring the conditions during the catalytic conversion process in the petrochemical and oil-refining industries," where the "only innovation was reliance on a mathematical algorithm." *Id.* (citing *Flook*, 437 U.S. at 585-86).

As the Court explained, the "patent application describes a method of updating alarm limits" where "[i]n essence, the method consists of three steps: an initial step which merely measures the present value of the process variable (*e.g.*, the temperature); an intermediate step which uses an algorithm to calculate an updated alarm limit value; and a final step in which the actual alarm limit is adjusted to the updated value." *Flook*, 437 U.S. at 585.

The *Flook* Court determined that once the particular algorithm was removed from consideration, "the application, considered as a whole, contain[ed] no patentable invention." *Flook*, 437 U.S. at 589-90, 594.

Together, *Benson* and *Flook* make clear that an algorithm (or mental process) does not become patent-eligible merely because a claim is written to include non-algorithmic that would be insignificant in the absence of the algorithm (or mental process). Furthermore, use of a machine or computer does not render an algorithm (or mental process) patentable if it is merely used to speed up or automate processing, as was the case in both *Benson* and *Flook*.

### *Diehr*

The claims in *Diehr* differed from those presented in *Benson* and *Flook* because they claimed a previously unknown method for 'molding raw, uncured synthetic rubber into cured precision products,' using a mathematical formula to perform some of its several steps by way of a computer." *Bilski*, 130 S.Ct. 3230 (citing *Diehr*, 450 U.S. at 177).

The claims in *Diehr* were held to be patent-eligible because the non-algorithmic elements, reciting the physical steps of molding raw, uncured synthetic rubber into cured precision products, were not insignificant in the context of the claim. The Court explained that "a physical and chemical

process for molding precision synthetic rubber products falls within the 101 categories of possibly patentable subject matter." and concluded that "because the claim was not 'an attempt to patent a mathematical formula, but rather [was] an industrial process for the molding of rubber products,' it fell within § 101's patentable subject matter." *Diehr*, 450 U.S. at 184, 192-93.

The ABL claims bear no resemblance to the patentable claims in *Diehr*, which were for an industrial process, contained physical steps and passed the transformation prong of the MOT test--something ABL minimizes in its brief.  Instead, the ABL claims are like the unpatentable claims in *Benson*, *Flook* and *Bilski*.

## B. The District Court Properly Individually Analyzed Each Limitation of the Claims

The District Court employed a conventional claim analysis paradigm by analyzing each step of the ABL claims individually.  It is not disputed that the preamble of the ABL claims plays no role in the statutory subject matter analysis.  ABL admits in its brief that the preamble is only limiting when it is necessary to give life, meaning and vitality to the claim. (ABL Br. at 45).  In accordance with *Prometheus*, the District Court properly found that the preamble of the ABL claim, which it referred to as step 1 of the claim, represents a process "that is performed in doctor's offices every day."

16

(A22).  While Smartgene submits that this finding is entirely proper and supported by the '786 patent itself, this finding is not relevant to the statutory subject matter inquiry.

### 1.  Step (a)

The District Court analyzed step (a) of the ABL claims.  The District Court found that this step adds nothing meaningful to the process that a doctor goes through in real time when a doctor evaluates a patient. (A22).  Regarding the knowledge bases, the District Court stated:

> Similarly, the patents' reference to three databases also mimics the evaluative process involved in the treatment of patients.  Specifically, after collecting patient information, a doctor would consider "therapeutic treatment regimens for said disease or medical condition" (as in the first knowledge base), consult "expert rules for evaluating and selecting a therapeutic treatment regimen for said disease or medical condition" (as in the second knowledge base), and review "advisory information useful for the treatment of a patient with different constituents of said different therapeutic treatment regimens" (as in the third database).

(A22).

ABL charges that the District Court erred by analogizing the limitations of step (a) to a physician's mind.  ABL is incorrect.  The District Court's analysis was entirely proper under this Court's precedent.  *See Bancorp Servs., L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1277 (Fed. Cir. 2012) ("Thus… a machine, system, medium, or the like may in some

cases be equivalent to an abstract mental process for purposes of patent ineligibility."). Here, the computing device is the equivalent of an abstract mental process because the computing device does nothing more than a human can do in his or her mind or using a pen and paper. That is, a doctor can be provided patient information and retain it in his or her mind or a person can be provided patient information and record it in a chart using pen and paper. Nothing more is required by step (a). Therefore, step (a) adds nothing to support a finding of eligibility under § 101.

### 2.  Step (b) and Step (c)

Consistent with *Prometheus*, the District Court analyzed step (b) and found that it merely describes what goes on in the mind of a doctor in evaluating and ranking possible treatment options for a patient. (A22). The District Court analyzed step (c) and determined that it corresponds to a doctor generating a treatment plan for a patient. (A23). ABL ascribes error to the District Court's analysis of steps (b) and (c) asserting that there is no evidence in the record of what "goes on in the mind of a doctor". Whether ABL's assertion about lack of evidence is correct or not, it misses the mark for the purposes of the § 101 analysis. The relevant question is not what actually goes on in the mind of the doctor but whether steps (b) and (c) could be performed in the mind of a person or by a person using a pen and paper.

*See*, *Cybersource v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011)("All of claim 3's method steps can be performed in the human mind, or by a human using a pen and paper.").  It is readily apparent, and not meaningfully challenged by ABL, that a doctor can generate a ranked listing of therapeutic treatment regimens and advisory information about those regimens in his/her mind.  The '786 patent itself supports this proposition by admitting that the invention can simulate that the judgment or behavior of a human.  (A174, 7:38-47).  Accordingly, steps (b) and (c) of the ABL claims add nothing that supports a finding of eligibility under § 101.

### C. The District Court Properly Analyzed the Claims as a Whole

The District Court analyzed the claims as a whole and properly determined that the claims simply track the abstract mental processes of a doctor treating a patient.  In coming to its conclusion, the District Court noted that the claim is very much like the claim in *Flook*  and *Prometheus* in that it is merely a recitation of abstract steps.  ABL makes no attempt to distinguish the ABL claims from *Flook* and ignores the fact that the ABL claims are even more abstract than the claim in *Flook*.

The *Flook* claim is more detailed and concrete than the ABL claims in as much as the *Flook* claim requires determining an alarm limit on at least one process variable involved in a process comprising the catalytic

19

conversion of hydrocarbons using a complex mathematical equation.  *Flook*, 437 U.S. at 596-597.  The *Flook* claim further requires that the alarm limit be updated based on a specified mathematical formula.  *Id.*  In contrast, the ABL claims call for generating a ranked listing of therapeutic treatment regimens without specifying any algorithm for ranking.  Thus, the ABL claims cover ranking the treatment regimens in any conceivable way and, as such, are not limited like the *Flook* claim.

Similarly, the ABL claims call for generating advisory information about the therapeutic treatment regimens based on expert rules and patient information.  The ABL claims do not specify any algorithm or formula for generating the advisory information and, consequently, do not limit the generation of advisory information in any meaningful way, unlike the *Flook* claim.

Furthermore, in *Flook*, the Supreme Court determined that "once that algorithm is assumed to be within the prior art, the application, considered as a whole, contains no patentable invention."  *Flook*, 437 U.S. at 594 (1978).  Here, the ABL claims contain no algorithm.  What is left when the data gathering and organization steps are removed from the claim is a computing device with three knowledge bases.  However, claiming a computing device to perform abstract data manipulation cannot render the ABL claims

statutory. *See Benson* 409 U.S. 73-74 (claim was held to be non-statutory despite the presence of physical computer structure).

In short, the controlling Supreme Court precedent of *Bilski* and *Prometheus* as well as the "guidepost" cases *of Benson* and *Flook* all demonstrate the non-statutory nature of the ABL claims.

## III.    The District Court Properly Found the ABL Claims Failed the MOT Test

The District Court found that the ABL claims fail the MOT test because (i) they are not tied to a particular machine and (ii) there is no transformation.

### A. The District Court Properly Found that the "Computing Device" Mentioned in the Claims is Not a Particular Machine

ABL argues that the District Court made three errors in assessing the machine prong of the MOT test.  First, ABL argues that the District Court erred in finding that the '786 patent includes no special programming code or any specific algorithms that computers would use to perform database matching or synthesis.  Secondly, ABL argues that the District Court erred in concluding that the ABL claims reference a general purpose computer. Lastly, ABL argues that the District Court erred in finding that the "computing device" does nothing more than speed up the research and mental processes that a doctor normally goes through when evaluating the

21

best treatment options or regimen for a given patient.  These arguments are

unavailing.

### 1.  The Claims Govern the §101 Analysis

In its brief, ABL argues that the discussion of computer components

in the '786 specification supports its position that the claims recite more than

a general purpose computer.  (ABL Br. 32-33).  Specifically, ABL argues

that the '786 patent specification references a system 20 that is illustrated

including a central server 32, a local server 34 and a local client 35.

Whether the specification identifies detailed computer components

and programming is not relevant for the purposes of the §101 analysis

because the focus is on the claims.  *See, e.g., Dealertrack, Inc. v. Huber,* 674

F.3d 1315, 1334 (Fed. Cir. 2012) ("The fact that certain algorithms are

disclosed in the specification does not change the outcome.  In considering

patent eligibility under § 101, one must focus on the claims.").  *See also*

*Bilski*, 130 S. Ct. at 3231 (only analyzing claims); *Benson*, 409 U.S. at 63-74

(only analyzing claims); *Flook*, 437 U.S. at 587-95 (only analyzing claims);

*Diehr*, 450 U.S. at 184-92 (only analyzing claims).  The ABL claims do not

recite a central server, a local server or a local client.  Accordingly, those

elements cannot convert ABL's general purpose computing device into a

specially programmed computer. *See Dealertrack,* 674 F.3d at 1334 (Fed.

Cir. 2012).

### 2.  The Claimed Computing Device Is a General Purpose Computer

The District Court properly found that the computing device refers to

a general purpose computer, relying on *Graff/Ross Holdings, LLP v. Fed.*

*Home Loan Mortg. Corp.*, CIV. 07-796-RJL-AK, 2010 WL 6274263

(D.D.C. Aug. 27, 2010) *report and recommendation adopted*, 892 F. Supp.

2d 190 (D.D.C. 2012)(finding that a "computer processor" referenced in

method claim is not a "particular machine" under the MOT test) and

*Accenture Global Services, GMBH v. Guidewire Software, Inc.*, 691 F.

Supp. 2d 577, 597 (D. Del. 2010) ("data processing system", "claim folder",

"display device", and "screen" referenced in claim do not constitute a

"particular machine" for the purposes of the MOT test).  Although

*Graff/*Ross and *Accenture* are not controlling law, they can provide valuable

guidance for determining the type of structures that are considered general

purpose computers.  It was entirely proper for the District Court to rely on

*Graff/Ross* and *Accenture*, and ABL has offered no reason why the District

Court should not have so relied.

The District Court's conclusion that the computing device is a general

purpose computer is further supported by the plain language of the claim.

The claims make no mention of any specific hardware, let alone software or specifically programmed hardware which might convert the computing device from a general purpose computer into a particular machine. The claims simply recite a computing device with three knowledge bases (databases).[3] A database is a standard component of a general purpose computer.

ABL also argues that the District Court ignored the three knowledge bases in its consideration of the computing device limitation. The District Court did not ignore the knowledge base limitations; it specifically referred to those limitations in its analysis and correctly concluded that the computing device is not a specially programmed computer. (A26-30). ABL has identified no error in the District Court's analysis.

### 3.  The District Court Was Not Required to Construe the "Computing Device" Limitation

ABL asserts that the District Court erred in interpreting the "computing device" limitation of the ABL claims. Specifically, ABL alleges that the District Court should have formally construed the

---

[3] Before the District Court, ABL argued that "knowledge base" means database, used those terms interchangeably during the Summary Judgment proceedings, and even proposed a claim construction where knowledge base means "database". (A526, A589).

"computing device" term and heard expert testimony in that construction process.  (ABL Br. 29-34).

It is not necessary for the District Court to formally construe the claims as part of the "abstract idea" inquiry.  In *Bilski*, the Supreme Court found the claims to be non-statutory as directed to an abstract idea without claim construction.  Likewise, this Court has held that claim construction is not required for the "abstract idea" inquiry.  *See Bancorp*, 687 F. 3d. at 1273.

*Bancorp* notes that it may be desirable to resolve claim construction disputes prior to the §101 analysis where there is a dispute about construction. *Id.* at 1274.  Here there was no such dispute.   Neither ABL nor Smartgene requested that the District Court construe the "computing device" limitation in connection with claims construction.  (A593-A600, A534-A572).  Now, in its brief, ABL advances for the first time that the "computing device" limitation requires construction.

The ABL claims are simple and, in any event, no more complex than the claims at issue in *Bilski*. Accordingly, ABL has demonstrated no error in the District Court's conduct of its "abstract idea" inquiry.

### 4.  The Claimed Method Does Not Require Use of a Computer

ABL cannot (and does not) assert that the claimed method cannot be performed mentally or with a pen and paper.  In fact, ABL concedes otherwise and argues that doctors evaluate, consider, construct and select treatment options for "a patient presenting a specific medical condition" without using a computing device at all.  (ABL. Br. 34).  The data manipulations that the ABL claims recite are simple data gathering and shifting operations that are readily performable by the human mind.  For instance, patient information can be provided to a physician (step (a) of the ABL claims).  The physician can then consider various therapeutic treatment regimens that he may already have in his mind or that may appear in medical literature.  The physician may then rank various treatments according to any suitable criteria (step (b) of the ABL claims).  The physician may then provide the patient with advisory information relating to a therapeutic treatment regimen based on the patient information provided according to expert rules (step (c) of the ABL claims).  None of the foregoing steps require use of a computer.

It is axiomatic that simply using a computer to speed up or automate a mental process does not render that process patent eligible.  *Bancorp*, 687 F.3d at 1279 ("Using a computer to accelerate an ineligible mental process

does not make that process patent-eligible."); *SiRF Tech. Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1333 (Fed. Cir. 2010) ("In order for the addition of a machine to impose a meaningful limit on the scope of a claim, it must play a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly, i.e., through the utilization of a computer for performing calculations.").  Here, the claimed computing device is not a particularized machine as required under the MOT test regardless of whether the computing device speeds up the claimed process and/or allows it to be performed more efficiently.

## B. The District Court Properly Found That the '786 Patent Affects No Transformation

ABL argues now, as it did before the District Court, that the ABL claims meet the transformation prong of the MOT test because the data used in the ABL claims is representative of physical objects or substances. This argument was rejected by the District Court and it should be rejected by this Court.

The "transformation" required to meet the transformation prong of the MOT test relates to a physical transformation of a tangible object "to a specified different state or thing".  *In re Bilski,* 545 F.3d 943, 954 (Fed. Cir. 2008), *aff'd on other grounds, Bilski,* _ U.S. _, 130 S.Ct. 3218, (2010);

27

*Flook*, 437 U.S. at 589 n. 9 ("this Court has only recognized a process as within the statutory definition when it either was tied to a particular apparatus or operated to change materials to a 'different state or thing.'").

Both before the District Court and before this Court, ABL has failed to demonstrate any physical transformation of a tangible object. Again, focusing on the ABL claims, no data transformation takes place. In claim 1, patient information (data) is provided but it is not transformed. Therapeutic treatment regimens (data) are present in a knowledge base but they are not transformed, they are simply reorganized into a ranked listing. Advisory information relating to the therapeutic treatment regimens is collected and matched to the ranked treatments but it is not transformed. Simply put, the ABL claims do not transform anything.

## IV.     Federal Circuit Precedent after *Bilski* Supports Unpatentability

Since *Bilski* was decided, the Federal Circuit has addressed the "abstract idea" exception to subject matter eligibility on several occasions. Some of the cases have employed different approaches in analyzing the subject matter eligibility issue. While *Bilski* stated that the MOT test is a useful and important clue to subject matter eligibility, neither *Bilski* nor *Prometheus* require any further specific test; rather, they instruct courts to employ the principals articulated in prior Supreme Court precedent.

28

Regardless of the approach employed by this Court, the ABL claims do not constitute patent eligible subject matter.

## A.    The ABL Claims are Non-Statutory Under the "Mental Steps" Approach

*Cybersource* analyzed the subject matter eligibility issue under an approach that Smartgene refers to herein as the "mental steps" approach.  In *CyberSource*, the patent related to a method for detecting credit card fraud over the Internet. The first step of the claim involved gathering data on credit card transactions over the Internet, a step which "cannot alone confer patentability." *Cybersource*, 654 F.3d at 1372. The second step of the claim was the construction of a map of credit card numbers, which the Court determined could consist of no more than "a list of a few credit card transactions." *Id*.  The third step used the map to determine if the credit card transaction was valid. *Id*. at 1373.

The Court found that the *Cybersource* method claim was directed to an unpatentable mental process because all of the steps "can be performed in the human mind, or by a human using a pen and paper," reasoning that "computational methods which can be performed *entirely* in the human mind are the types of methods that embody the 'basic tools of scientific and technological work' that are free to all men." *Id*. at 1372-3 (quoting *Benson*, 409 U.S. at 67).

29

The ABL claims are analogous to one of the non-statutory claims at issue in *Cybersource* (claim 3) in that the process steps of the ABL claims (providing, generating and generating) can all be performed in the human mind.  *See infra* at Section IIB1-2.  While the ABL claims differ from the *Cybersource* claim in that the ABL claims expressly recite "a computing device", this difference is insignificant in the §101 analysis as the computing device is incidental to the claimed process.  *See Fort Props., Inc. v. Am. Master Lease LLC,* 671 F.3d 1317 (Fed.Cir.2012); *Benson*, 409 U.S. at 73-74 (claim was held to be non-statutory despite the presence of physical computer structure).  Accordingly, the ABL claims are non-eligible subject matter under the mental steps approach.

## B.  The ABL Claims Are Non-Statutory Under the "Meaningful Limitations" Approach

Another analytical approach employed by the Federal Circuit is what is sometimes referred to as the "meaningful limitations" approach.  This approach was employed in Judge Radar's concurring opinion in *CLS Bank Int'l v. Alice Corp. Pty. Ltd.,* 717 F.3d 1269, 1299 (Fed. Cir. 2013), and most recently in *Ultramercial, Inc. v. Hulu*, *LLC* __F.3d__, 2013 WL 311303 (Fed. Cir. 2013). *See also, Fort Properties,* 671 F.3d at 1323.

In the meaningful limitations approach, the relevant inquiry must be whether a claim includes *meaningful* limitations restricting it to an

application, rather than merely an abstract idea. *CLS Bank* Int'l, 717 F.3d at 1299.  A claim is not meaningfully limited if it merely describes an abstract idea or simply adds "apply it".  *Id* (citations omitted).  Even if a claim does not wholly preempt an abstract idea, it will not be limited meaningfully if it contains only insignificant or token pre- or post-solution activity.  *Id.*.  In addition, a claim is not meaningfully limited if its purported limitations provide no real direction, cover all possible ways to achieve the provided result, or are overly generalized.  *Id.*

A claim is meaningfully limited if it requires a particular machine implementing a process or a particular transformation of matter.  *Id.* (citations omitted).  A claim also will be meaningfully limited when, in addition to the abstract idea, the claim recites added limitations which are essential to the invention.  *Id.*

ABL argues that the presence of the "computing device" in its claim is a meaningful limitation which renders the claim statutory.  (ABL Br. 34-38).  This argument is without merit.

Similar to the computer related limitations at issue in *Fort Properties* and *Dealertrack*, the computing device in the ABL claims does not play a significant role in the claimed method.  Specifically, the ABL claims only require the computing device to generate a ranked listing of therapeutic

31

treatment regimens and to generate advisory information about the therapeutic treatment regimens.  The ABL claims are silent as to how the computing device, including its three knowledge bases, aids this method, the extent to which the computing device aids this method, or the significance of the computing device to the performance of this method.  Simply adding a computer limitation to a claim covering an abstract concept, without more, is insufficient to render the claim patent-eligible.  *See Dealertrack*, 674 F.3d at 1333; *Fort Properties*, 671 F.3d at 1323-1324 (computer limitation added to claim covering abstract concept held to be insignificant post-solution activity and claim found to be ineligible).[4]  Accordingly, the ABL claims are non-statutory under the "meaningful limitations" approach.

Instead of demonstrating how the language of the ABL claim supports a finding of eligibility under the meaningful limitations approach, ABL contends that the "computing device" is a meaningful limitation because doctors routinely practice the abstract idea of evaluating, considering and constructing treatment options for a patient presenting a specific medical condition without infringing the ABL patents.  While Smartgene agrees that doctors routinely practice the abstract mental process of the ABL claims;

---

[4] The ABL claims and the claims at issue in *Dealertrack* and *Fort Properties* are readily distinguishable from the claims in *Ultramercial* which require intricate and complex computer programming.

whether the doctors infringe the ABL patent when practicing that process is not probative of whether the computing device is a meaningful limitation. ABL cites no authority from this Court or any other court for its novel meaningful limitations theory and this Court should reject that theory.

In view of the foregoing, it is readily apparent that the ABL claims ares non-statutory when analyzed under the meaningful limitations approach.

### C. The ABL Claims are Non-Statutory Under the Preemption Approach

The "Preemption" approach is a further analytical stratagem employed by Judge Lourie in his concurring opinion in *CLS Bank* and in the concurrence in *Ultramercial*.[5]

Under the preemption approach, a court must first identify whether the claimed invention fits within one of the four statutory classes set out in § 101. *CLS Bank,* 717 F.3d at 1282-1283. Second, the court must assess whether any of the judicial exceptions to subject-matter eligibility apply, including whether the claims are to patent-ineligible abstract ideas. *Id.* In the case of abstractness, the court determines whether the claim poses any

---

[5] ABL chides the District Court for failing to follow the preemption test. The District Court followed *Prometheus*, which does not require application of the preemption test, and, therefore, the District Court's election not to apply the preemption test does not constitute error.

risk of preempting an abstract idea. *Id.* To do so, the court must first identify and define the fundamental concept that is wrapped up in the claim. *Id.* The court must then evaluate the balance of the claim to determine whether additional substantive limitations narrow, confine or otherwise tie down the claim so that, in practical terms, it does not cover the full abstract idea itself. *Id.*

While it appears that the ABL claims broadly fall under the "process" category of patent-eligible subject matter, the ABL claims also fall under the abstract idea exception. The abstract idea embodied in the ABL claims is the process of determining the most viable treatment option(s) for a patient having a specific medical condition.

The balance of the ABL claims add nothing of meaning apart from the abstract idea. ABL contends that the "computing device" limitation adds meaning to the claim. This contention is false. The computing device does nothing more than automate the generation of a ranked listing of therapeutic treatment regimens and the generation of advisory information, steps that ABL has admitted that doctors perform without computers. (ABL. Br. 34-35). The ABL claims do not recite a single function that cannot be performed by a human in his/her mind or using pen and paper. *See Cybersource,* 654 F.3d at 1372. There is no specific or limiting recitation of

improved computer technology. *See Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 865, 868-869 (Fed. Cir. 2010). Simply appending generic computer functionality to lend speed or efficiency to the performance of an otherwise abstract concept does not meaningfully limit the claim scope for the purposes of patent eligibility. *CLS Bank*, 717 F.3d at 1286 (citations omitted). In short, the presence of the computing device in the ABL claim fails to supply an inventive concept that represents a nontrivial, nonconventional human contribution or materially narrows the claims relative to the abstract idea they embrace. *Id.*

ABL further argues that the generation of a "ranked listing" of treatment regimens is a meaningful limitation that renders the ABL claims patent eligible. (ABL Br. 38-40). This limitation cannot save the ABL claim.

In order to provide a patient with the most viable treatment regimens, i.e., practice the abstract idea embodied in the ABL claims, a physician necessarily considers multiple treatment regimens. The physician will necessarily select one treatment regimen over another based on some rule or criteria. The act of selecting one treatment regimen over another based on a rule or criteria means that the physician has ranked the treatment regimens by definition. In other words, ranking treatment options is inherent in

carrying out the abstract idea (mental process) of determining the most viable treatment option(s) for a patient having a specific medical condition and such ranking does not meaningfully narrow the claim. *Id.* at 1312.

In sum, there is nothing in the ABL claims that represent significantly more than the underlying abstract idea. Aside from the requirement for a computing device, the ABL claims closely mirror the *CLS Bank* method claims. While the *CLS Bank* method claims did not expressly recite a computer, they did have an implied requirement for a computer. Nevertheless, adding a generic computer to facilitate performance provides no substantial limitation and therefore is not enough to satisfy § 101. Consequently, the ABL claims improperly preempt the abstract concept embodied therein and are therefore non-statutory.

## V.      DC Circuit Review Standards Apply to the Non-patent Issues

In reviewing issues not unique to patent law, this Court must look to the law of its appropriate regional sister circuit which, in this case, is the United States Court of Appeals for the District of Columbia Circuit, ("DC Circuit"). *See i4i Ltd. P'ship v. Microsoft Corp.,* 598 F.3d 831, 841 (Fed. Cir. 2010), *aff'd,* 131 S.Ct. 2238 (2011).

"A grant or denial of a motion to strike 'is not an issue unique to patent law, and [courts] therefore apply the law of the regional circuit' in

36

deciding that question." *Acumed LLC v. Stryker Corp.,* 551 F.3d 1323, 1331

(Fed. Cir. 2008) (quoting *Anchor Wall Sys., Inc. v. Rockwood Retaining*

*Walls, Inc.,* 340 F.3d 1298, 1313 (Fed. Cir. 2003).  Likewise, the grant or

denial of a motion for reconsideration is not unique to patent law and,

therefore, reviewed under the standard employed by the applicable regional

circuit.  *Delaware Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*, 597

F.3d 1374, 1379 (Fed. Cir. 2010);  *see also*, *ePlus, Inc. v. Lawson Software,*

*Inc.*, 700 F.3d 509, 516 (Fed. Cir. 2012).

### A. The More Deferential Abuse of Discretion Standard Applies to Procedural Issues

The DC Circuit reviews District Court rulings (1) to supplement

disclosures, (2) to strike, and (3) for judgment under Rule 54(b) or for

reconsideration under an abuse of discretion standard.  *Capitol Sprinkler*

*Inspection, Inc. v. Guest Servs., Inc.,* 630 F.3d 217, 225 (D.C. Cir. 2011)

citing *Washburn v. Lavoie,* 437 F.3d 84, 94 (D.C. Cir. 2006) (discovery

deadlines); *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner,*

101 F.3d 145, 150 (D.C. Cir. 1996) (motion to strike); *Flynn v. Dick Corp.,*

481 F.3d 824, 829 (D.C. Cir. 2007) (motion for reconsideration).  *See also*,

*GSS Grp. Ltd v. Nat'l Port Auth.,* 680 F.3d 805, 810-11 (D.C. Cir. 2012);

and *Patton Boggs LLP v. Chevron Corp*., 683 F.3d 397, 403 (D.C. Cir.

2012).  Therefore, in this case, the District Court's rulings denying

37

reconsideration and concomitantly striking the declarations and attachments must be reviewed under the abuse of discretion standard.

An abuse of discretion occurs when a court misunderstands or misapplies the relevant law or makes clearly erroneous findings of fact. *PPG Indus., Inc. v. Celanese Polymer Specialties Co.,* 840 F.2d 1565, 1572 (Fed. Cir. 1988). The Federal Circuit has adopted a definition that parallels the deferential standard of the DC Circuit: "[a]n abuse of discretion occurs when the district court relies on clearly erroneous findings of fact, fails to consider a relevant factor, or applies the wrong legal standard." *Pigford v. Johanns*, 416 F.3d 12, 23 (D.C. Cir. 2005) (internal citations omitted).

## B. ABL's Reliance on *Dyson* Is Misplaced

At page 12 of its brief, ABL cites to *Dyson v. Dist. of Columbia,* 710 F.3d 415, 416 (D.C. Cir. 2013) as suggesting that this Court must engage in plenary (*de novo*) review rather than the more deferential abuse of discretion standard. Referring to *Dyson*, ABL contends that in granting Smartgene's motion to strike and denying ABL's reconsideration motion, the District Court engaged in improper interpretation and application of a legal precept. Disregarding that the District Court suffered from no such infirmity, *Dyson* is readily distinguishable and inapposite to this case.

In *Dyson*, a Title VII case, for the first time in her reconsideration motion the movant raised an "equitable tolling" theory based on the pendency of her EEOC claim. The non-movant (city) did not argue against consideration of the newly-raised equitable tolling theory or the timing thereof in opposing the reconsideration motion below. Because the District Court engaged in analysis on the merits of that newly-raised equitable tolling theory, the DC Circuit Court recognized *Dyson* as representing one of those rare instances permitting *de novo* review of a decision under Rule 59(e) declining reconsideration.

In contrast to *Dyson*, Smartgene did not acquiesce in ABL's reconsideration gamesmanship before the District Court, but vigorously opposed the inclusion of the "new evidence" in the record (A2655-2706) and rejected ABL's "change in the law" theory (A2747-2758). In view of the facts of this case, *Dyson* is inapposite and this Court must reject ABL's suggestion that the procedural matters be reviewed under the less deferential, plenary *de novo* standard.

### C. ABL's Inclusion of and Reliance on Stricken Material in Its Brief Is Improper

In this case, the District Court unambiguously declined the post-judgment introduction and inclusion of the objectionable materials. In holding: 1) that the materials were in existence pre-judgment and therefore

not "new", and 2) that ABL failed to present that material to the Court pre-

judgment.  The District Court stated:

> To the extent that the defendants would now like to bolster their
> arguments with evidence that apparently would have been available to
> them while the Motion for Partial Summary Judgment was pending,
> they may not do so. FN8
>
> > FN 8  …The plaintiff has filed a Motion to Strike these
> > declarations, as well as the exhibits attached to the declarations,
> > and any reference to them in the defendants' Motion for
> > Reconsideration. *See* ECF No. 68 at 11. Since the Court denies
> > the defendants' Motion for Reconsideration, disagrees with the
> > defendants' contention that there was a change in controlling
> > law, and finds no other reason that the defendants should now
> > be able to supplement the record in this case with evidence that
> > could have been provided before this Court made its decision
> > on the plaintiff's Motion for Partial Summary Judgment, the
> > Court will grant the Plaintiff's Motion to Strike the
> > Declarations and Certain Exhibits Attached to Defendant's
> > Motion for Reconsideration.

*See* (A 55).

Inclusion of and citation to the stricken materials by ABL in the

present appeal brief and the appendix is objectionable and improper. *See*

*Catrett v. Johns-Manville Sales Corp.*, 826 F.2d 33, 37 (D.C. Cir. 1987).

Only materials before the district court before rendering judgment will be

considered. *Frito-Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1035-36 (D.C.

Cir.1988).

In the present case, notably, ABL did not seek leave of this Court before including those voluminous materials presented for the first time by ABL in connection with its Rule 59(e) motion in the appendix of the instant appeal.   The objectionable materials, in particular, consist of the Declarations and the attachments thereto of Mr. McCreedy and Mr. Sibley (A973-2651).  In its brief, ABL has referred, in particular, to the following page numbers: A975, A976, A982-985, A1026, A1092, A1108-1112, A1113-1114, A1162, A1190, A1192, A1207, A1208, A1220, A2648, and A2650.[6]

In striking these materials, the District Court effectively declared that those items were not properly before it, did not constitute evidence, and were not considered.  Consequently, the items should not be considered by this Court or included in the record on appeal.  *See Belt v. Holton*, 197 F.2d 579, 582 (D.C. Cir. 1952).

This Court has confronted occasions where a party has improperly included in the appendix or cited in its brief to material not properly before the District Court and not properly in the record on appeal.  In such cases,

---

[6]  While some of these citations comprise excerpts to the file histories of the patents and reexamination associated with the case, those materials were not before the District Court for its summary judgment.  Thus, as only comprising excerpts and not the entire file histories, they should be disregarded.  *See Am. Standard Inc. v. Pfizer Inc*., 828 F.2d 734, 746 (Fed. Cir. 1987) (Submission of file history excerpts was improper).

the Court has disregarded such materials or required correction by striking

those materials. *See Delaware Valley,* 597 F.3d at 1384; *Ballard Medical*

*Prods. v. Wright,* 821 F.2d 642, 643 (Fed. Cir. 1987). Absent proper basis, a

reviewing court should disregard and ignore materials submitted to the

district court below for the first time only in connection with the

reconsideration motion. The court in *In re Cygnus Telecommunications*

*Tech., LLC, Patent Litig.*, 536 F.3d 1343 (Fed. Cir. 2008) stated:

> As an initial matter, we note that on appeal Cygnus has cited various portions of the record below that were not presented to the district court in conjunction with the briefing on the summary judgment motion.  Cygnus has not offered any explanation for its failure to bring the materials it now cites to the district court's attention in connection with the summary judgment motion…we will not consider any part of the record that was not presented to or cited to the district judge in connection with that motion.

*Id.* at 1351-53.

As was the case in *Cygnus*, here ABL has wrongly assumed that in

challenging the District Court's summary judgment order, it is entitled to

rely on and make of record for any purpose, any materials that it submitted

in connection to its post-judgment reconsideration motion.  ABL appears to

disregard the proceedings below and, because it has appealed, believes it is

entitled now to open the gates for the introduction of new evidence, new

materials, and new theories. That is wrong.  ABL is not entitled to casually

sprinkle citations to materials stricken by the District Court below to argue its case on the merits. Those material and references are found in ABL's brief at Pg 3, ln 2, A1026;  Pg 4, ln 10, A975, ln 18, A2650, ln 20, A2648; Pg 5,  ln 7, A2650, ln 19, A1108-1112;  Pg 6, ln 5, A1190, A1113-1114, ln 12, A982-985; A1071-1093, ln 17, A976, A785, A1092;  Pg 36 ln 6, A1220;  Pg 39  inset quotation A1192;  Pg 43  ln 9, A1162;  Pg 52  ln 12, A1207, A1208;  and Pg 53  ln 2, A982.

Smartgene has continuously objected to and never acquiesced to inclusion of those materials in the record or as evidence in the summary judgment.  In accordance with DC Circuit precedence and the practices of this Court sitting in review, Smartgene urges this Court, at a minimum, to disregard those materials and any portion of ABL's brief content referring thereto.

## VI.    The District Court Properly Denied Reconsideration under Rule 59(e)

ABL's entire challenge of the District Court's denial of reconsideration is predicated on "a change in the controlling law" resulting from *Prometheus*.  But *Prometheus* is not a change in controlling law.  *See CLS Bank Int'l.*, 717 F.3d at 1283 (holding *Prometheus* was consistent with *Diehr* and *Flook* and did not "depart from case law precedent.")

As the Supreme Court has observed, "a litigant's failure to buttress its position because of confidence in the strength of that position is always indulged in at the litigant's own risk." *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 897 (1990). Before filing its reconsideration motion ABL confidently relied on its earlier theories that were ultimately rejected. ABL even admits in its brief that in its reconsideration motion it "articulated new theories of patent eligibility" (ABL Br. at 12). But Rule 59 motions are not to be used as relief because an unhappy party failed to urge a theory which it could have raised in original proceedings. *See Grumman Aircraft Eng'g Corp. v. Renegotiation Board,* 482 F.2d 710 (D.C. Cir. 1973), *rev'd on other grounds,* 421 U.S. 168 (1975). The denial of a Rule 59 motion which attempts to demonstrate a new legal theory is a fitting use of the discretion reposed in the district court. *Id.* at 721.

In addition to the precedent of the DC Circuit, this Court similarly has rejected new theories of patent eligibility articulated in support of reconsideration. Reconsideration is not the place or time for raising new arguments that could have been raised earlier. *Wellman, Inc. v. Eastman Chem. Co.,* 642 F.3d 1355, 1363 (Fed. Cir. 2011); *Bluebonnet Sav. Bank, F.S.B. v. United States,* 466 F.3d 1349, 1361 (Fed. Cir. 2006). By confessing it presented a new theory to the District Court, ABL betrays its

44

claim that a change in the law, *per se*, entitles it to reconsideration.

Accordingly, the District Court properly ruled in declining reconsideration

in this case.

**VII.    The District Court Acted Properly in Invalidating All Claims of the '786 and '988 Patents**

### A. The Record Amply Demonstrates Ongoing Injury to Smartgene from the Existence of the Patents-in-Suit

The District Court properly held all of the claims of the patents-in-suit

to be invalid because this case commenced as a Declaratory Judgment action

and the record shows on-going continuous harm to the Declaratory

Judgment Plaintiff from the patents-in-suit.  ABL's assertion that there is no

evidence of ongoing injury to Smartgene's business based on the patents, is

not true.  As addressed but not relied on by the District Court (A50), Mr.

Ellis's declaration (A2755-2758) filed in opposing ABL's reconsideration

motion, recites the specific nature of the injuries being sustained by

Smartgene due to the patents-in-suit (*see* Paragraphs 6-8).  The Ellis

declaration and Smartgene's arguments were prompted by ABL, who for the

first time in its motion for reconsideration, challenged declaratory judgment

jurisdiction and contended that the suit involved less than the entirety of all

128 claims of the patents-in-suit.  Following the unfavorable disposition of

the District Court, ABL argues that because it voluntarily limited its analysis

to a set of representative claims, only those claims are implicated in
Smartgene's Declaratory Judgment suit.  In so arguing, ABL seeks to escape
the adverse ruling invalidating the patents-in-suit in their entirety.

Not unreasonably, to support its position, ABL relies on the following
decisions of this Court:  *Jervis B. Webb Co. v. So. Sys., Inc.,* 742 F.2d 1388
(Fed. Cir. 1984); *Streck, Inc. v. Research & Diagnostic Sys., Inc.,* 665 F.3d
1269 (Fed. Cir. 2012); and *Fox Grp., Inc. v. Cree, Inc*., 700 F.3d 1300 (Fed.
Cir. 2012).  However, because the present case commenced as a declaratory
judgment action asserting invalidity of the patents-in-suit and the record
contains the uncontroverted Ellis declaration illustrating the existence of a
continuous, on-going injury to Smartgene based on existence of the patents-
in-suit, it is readily distinguishable from those cases.  Indeed, Smartgene
suggests the present circumstances to be more akin to those in *Scanner
Techs. Corp. v. ICOS Vision Sys. Corp. N.V.,* 528 F.3d 1365 (Fed. Cir. 2008)
where invalidation of all claims was appropriate when an affirmative
withdrawal of the unasserted claims in the case was not recorded.  ABL, in
this case, never affirmatively withdrew the unasserted claims

Furthermore, this is not a situation where ABL has given an
unconditional agreement not to sue Smartgene for infringement of any future
products or enforce the patents in suit against Smartgene's customers.

Under the circumstances and given the history between the parties, it is

perfectly reasonable for Smartgene to fear future legal action by ABL

against it directly or its customers based on the patents-in-suit.  On that

basis, as confirmed by the District Court, the Declaratory Judgment action

involved the patents-in-suit, not some select subset or segment thereof.

Under the "the totality of the circumstances" test of *MedImmune, Inc. v.*

*Genentech, Inc.,* 549 U.S. 118, 127 (2007), the District Court properly

invalidated all of the claims and declined reconsideration of ABL's request

to resurrect the non-representative claims.

### B. The Record Fully Supports the Propriety of the District Court's Claims Grouping

In reaching its decision, the District Court held the claims of the '786

and '988 patents to be "nearly identical". (A30).  In the context of its § 101

analysis, the District Court also under *In re Meyer,* 688 F.2d 789 (C.C.P.A.

1982)*,* held that the treatment of method claims and means-plus-function

claims is the same.  (A3 FN4, A47-48).  These findings contravene ABL's

contention that the District Court erred by lumping the claims together.

Indeed the District Court discussed the propriety of grouping the

claims in this case based on the fact that ABL, in its summary judgment

brief, elected not to contest Smartgene's assertion that claim 1 of the '786

patent was representative of all of the claims (A511-529, A50-51) and only

47

feebly argued at oral argument that some vague distinction existed between the method and system claims (A47 FN4).

ABL makes essentially the same argument to this Court as it did at the summary judgment oral argument.  (A2789-2791).  That is, ABL argues, without explanation, that the claims cannot be grouped together because they are different in form, type and limitations.  This argument ignores this Court's precedent which expressly permits, method, system and computer program products to be grouped together for the purposes of the § 101 analysis.  *See Bancorp*, 687 F.3d at 1277.  Accordingly, the District Court, on the facts of this case, properly grouped the claims as set out in the record and did not err by invalidating all of the claims of the patents-in-suit, according to the grouping.

## CONCLUSION AND RELIEF SOUGHT

The claims of the '786 and '988 patents are all directed to abstract ideas and are therefore not eligible for patent protection.  The District Court properly granted Smartgene's motion for summary judgment.  The District Court did not abuse its discretion either when it properly denied reconsideration, properly finding that *Prometheus* did not represent a change in controlling law and granting Smartgene's motion to strike the improper materials filed by ABL in support of its reconsideration motion.  Therefore,

Smartgene respectfully requests that this Court affirm the District Court's

entry of judgment in its favor.

Respectfully submitted

Attorneys for Appellee
Smartgene, Inc.

 /s/  Frederick N. Samuels
Frederick N. Samuels, Esq.
Maurice U. Cahn, Esq.
CAHN & SAMUELS, LLP
1100 17th St., N.W., Ste. 401
Washington, D.C. 20036
Tel:  (202) 331-8777
frederick.samuels@cahnsamuels.com
maurice.cahn@cahnsamuels.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of August 2013, I will electronically file the following:

## BRIEF OF PLAINTIFF-APPELLEE SMARTGENE, INC.

(text searchable)

with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Counsel for Appellant, Advanced Biological Laboratories, SA, et al

Michael J. Sacksteder
Jeffery V. Lasker
Robert Sachs
Daniel R. Brownstone
FENWICK &WEST, LLP
555 California St. 12th Floor
San Francisco, CA 94104
Email: msacksteder@fenwick.com;
jlasker@fenwick.com;
rsachs@fenwick.com;
dbrownstone@fenwick.com

By: /s/ Maurice U. Cahn
        Maurice U. Cahn, Esq.

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE
REQUIREMENTS**

1. This brief complies with the type-volume limitation of Federal Rule of

Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure

28.1(e). The brief contains *10053* words, excluding the parts of

the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).


2. This brief complies with the typeface requirements of Federal Rule of

Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28,1(e)

and the type style requirements of Federal Rule of Appellate Procedure

32(a)(6).  The brief has been prepared in a proportionally spaced typeface

using *Word 97-2003* in *14 pt. New Times Roman* font.


  /s/ Maurice U. Cahn
Maurice U. Cahn, Esq.
Attorney for Plaintiff-Appellee, Smartgene, Inc.

**August 2, 2013**